SCHRAM GLASS MFG. CO. v. HOMER BROOKE GLASS CO.

(Circuit Court of Appeals, Seventh Circuit. February 2, 1920.)

No. 2752.

PATENTS ☞328—FOR CUTTING MOLTEN GLASS INFRINGED.
    The Brooke patent, No. 723,983, for apparatus for cutting molten glass, *held* infringed by the use of the apparatus of the Steimer patent, No. 549,404, with the addition of the Brooke automatic cutting means.

Appeal from the District Court of the United States for the Southern Division of the Southern District of Illinois.

Suit by the Homer Brooke Glass Company against the Schram Glass Manufacturing Company. From a supplemental decree for complainant, defendant appeals. Affirmed.

Russell Wiles, of Chicago, Ill., for appellant.
Charles Neave, of Boston, Mass., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

PER CURIAM. In Schram Glass Mfg. Co. v. Homer Brooke Glass Co., 249 Fed. 228, 161 C. C. A. 264, we found that the Brooke patent, No. 723,983, was valid and was being infringed by the apparatus then in use by the appellant. That report is referred to for an exposition of the Brooke patent.

This appeal is from the supplemental decree holding that appellant is guilty of infringing the Brooke patent by using the Steimer patent, No. 549,404, with other mechanical means, so as to constitute "an automatic device for cutting or separating an unsupported freely flowing stream of molten material into unformed molten masses." Steimer's device is explained in our former opinion.

In holding that the Steimer measuring instrument did not comprise sufficient means to constitute the Brooke automatic device, and therefore did not anticipate the Brooke invention, we had supposed that it would be sufficiently clear to appellant that it was not at liberty to add to Steimer the Brooke means of constructing and using an automatic device.

Appellant's misapprehension results from assuming that "a cutting knife and means for moving the same and means for supporting the severed stream" constitute the automatic device that Brooke explained in his specification and covered in each of his claims. We can conceive of no method, and on inquiry of appellant at the argument failed to learn, how the three elements, the cutting knife, and means for moving the same, and means for supporting the severed stream, can be made into an automatic device for molding glass. Brooke's claims do not say that his device consists of those three elements and none other. Each claim calls for an automatic device "comprising"—that is, including—the three named elements.

When we learn from Brooke's specification that his method of producing automatically molded articles of glass requires the presence

of a furnace and a regulated discharge therefrom, and the co-operation of the furnace and discharge with the cutting knife and means for moving the same and means for supporting the severed stream, and the time relation between the volume and rate of flow of the stream and the movements of the cutting knife, it seems clear to us that the three named elements are to be read as a subcombination in a structural whole and that the other necessary elements of furnace and regulated discharge are present in each claim by virtue of the opening phrase "an automatic device for cutting or. separating the flowing stream of molten material into unformed molten masses." Such was necessarily the scope given the Brooke claims in Brooke v. Hartford-Fairmont Co., 262 Fed. 427, —— C. C. A. —— (C. C. A. Second Circuit), in which the finding of noninfringement was based solely on the differences in structure and mode of operation between the plaintiff's and defendant's furnaces and discharges therefrom.

The decree is affirmed.