## W. A. SCHLEIT MFG. CO., Inc., v. SYRACUSE RADIATOR CO., Inc., et al.

(District Court, N. D. New York. January 24, 1922.)

1. Patents ⊙⟶328—1,174,525, for draft regulator for water heaters, held valid and infringed.

The Schleit patent, No. 1,174,525, for draft regulator for hot water heaters, *held* not anticipated, valid, and infringed.

2. Patents ⊙⟶317—Right to injunction not defeated by discontinuance of infringement.

The owner of a patent is entitled to an injunction against an infringer, though infringement has been discontinued.

In Equity. Suit by the W. A. Schleit Manufacturing Company, Inc., against the Syracuse Radiator Company, Inc., and others. Decree for complainant.

Denison & Thompson, of Syracuse, N. Y. (Eugene A. Thompson, of Syracuse, N. Y., of counsel), for plaintiff.

George H. Bond, Clarence R. King, and F. G. Bodell, all of Syracuse, N. Y. (Arthur E. Parsons, of Syracuse, N. Y., of counsel), for defendants.

COOPER, District Judge.  [1] This is a suit for infringement of Letters Patent No. 1,174,525, issued March 17, 1916, to W. A. Schleit and by him assigned to the plaintiff corporation.  The patent is for a draft regulator for hot water heaters, and the claims in suit are three in number, the first, second, and fifth.  The patent describes a heater which embodies a combustion chamber and a smoke chamber separated by a draft valve, which has a lost motion connection with one end of a lever.  This lever is pivoted in the smoke chamber, and the other end of it is in contact with a check damper, which controls the air inlet through the smoke chamber, but is not connected to it.

By the means described in this patent a close regulation of temperature is maintained.  Upon a rise of the temperature of the water in the water heating system connected with the heater to a predetermined point of regulation, the thermostatic regulator operates to open a check damper, and thereupon the draft damper, restrained from closing by the closed check damper, is free to close, and upon a decrease in the temperature of the water the check damper automatically closes and operates the lever connected to the draft damper and causes the same to open.  The claims are as follows:

Claim 1: "A heater having a check damper and a draft damper, means for operating the check damper, and means attached to a wall of the heater and in contact with the check damper for transferring the movement from the check damper to the draft damper in reverse form."

Claim 2: "A heater having a combustion chamber and a smoke chamber, a draft damper for the combustion chamber and a check damper for the smoke chamber, means within the smoke chamber and attached to a wall thereof for transferring movement from the check damper to the draft damper in reverse form, and means for operating the check damper."

Claim 5: "In a water heater, a check damper, a draft damper, a supporting member for said draft damper pivoted to a wall of the heater and having a lost motion connection with said draft damper, means for operating the check damper, said supporting member being operated by the movement of the check damper to open and close the draft damper."

The defendant conceded that it manufactured six heaters somewhat similar to the plaintiff's construction, and also that it had changed its construction immediately after receiving notice from the plaintiffs of the alleged infringement.  This suit merely involves the old construction, the manufacture of which has since been abandoned by the defendant, the plaintiff not desiring to litigate at this time the later or present construction.

The defendant's machine is substantially a copy of that of the Schleit patent.  While the defendants contend that the lever in their construction is not pivoted at the same place as that of the Schleit patent, they assert that the draft damper was operated by means controlled by the thermostatic regulator, and that the draft damper was connected by a chain to the inner end of a lever pivoted to the wall of the smoke chamber, and that the other end of the lever engaged the inner face of the check damper.  Pivoted to the wall of the smoke chamber is substantially the same construction as is disclosed in the Schleit specification.  It is specified in claim 2 thereof as "means within the smoke chamber and attached to the wall thereof."  The fact that the smoke chamber in the patent is directly above the combustion chamber, while

the smoke chamber of the defendant's structure is at the side, does not enable the defendants to escape infringement; the same being substantially an equivalent. Palmer v. Superior Mfg. Co., 210 Fed. 452, 127 C. C. A. 284; Union Paper Bag Mfg. Co. v. Murphey, 97 U. S. 120, 24 L. Ed. 935. It thus appears that the two structures are substantially the same, and the method of operation substantially identical within the terms of the patent.

The question then arises: Has the plaintiff a patentable invention? The best evidence of the novelty and utility of the Schleit patent is the fact that the defendant copied it. While the general art is not new, the Schleit patent is an improvement in the simplicity of operation and economy of construction, in that but one connection to the controlling valves is necessary. The fact that the plaintiffs themselves do not now manufacture the article is immaterial, as they may do so, and have granted licenses to others who have manufactured it.

Of the patents cited by the defendant to prove prior art, the Miller patent, No. 548,079, does not disclose a pivot member, but rather two valves, which are tightly connected to each other by a link which permits no relative movement of the two valves from a draft damper to a check damper in reverse form. Neither is there the means pivoted within the smoke chamber and attached to the wall thereof in the Hall patent, No. 692,277. That patent discloses a construction in which the operating mechanism has a separate connection to each damper.

In the Adair patent, No. 952,310, the pipes controlled by the damper are connected independently one above the other. Other patents cited are not anticipatory of the Schleit patent. The plaintiff's patent, therefore, is valid and infringed as to the claims in suit.

[2] Regardless of the fact that the defendant has ceased to further manufacture the construction, the plaintiff is entitled to the security of an injunction. Celluloid Mfg. Co. v. Arlington Mfg. Co. (C. C.) 34 Fed. 324; Sawyer Spindle Co. v. Turner (C. C.) 55 Fed. 979. The bill, however, is dismissed as to the individual defendants Jones and Collins; they being at the time merely agents of the defendant corporation, and having no activities outside of those of the corporate defendant.

The plaintiff is instructed that in any communications to the trade regarding this litigation it must advise the trade that this adjudication in no way affects the construction of defendant's present apparatus; that no claim for infringement was made in this suit against defendant's commercial structure, now being manufactured.

The plaintiff may have a decree.