23 C.C.P.A.(Patents)

### In re MACREADY.
### Patent Appeal No. 3583.

Court of Customs and Patent Appeals.
Feb. 17, 1936.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

On February 7, 1933, the United States Patent Office issued to appellant Macready a patent, No. 1,896,522, entitled "Apparatus for Obtaining Samples from Drilled Wells"; the patent being based upon an application filed July 5, 1922, and renewed October 10, 1927. As allowed, the patent contains seven claims.

On February 10, 1926, one John T. Simmons filed an application, which, on October 17, 1933, matured into patent No. 1,930,-987, entitled "Method and Apparatus for Testing the Productivity of Formations encountered in Wells." This patent contains 19 claims.

On February 2, 1934, appellant filed application, serial No. 709,518, for the reissue of his patent No. 1,896,522 and, for interference purposes, copied a number of the claims allowed in the patent to Simmons, among them being a claim which reads:

"An apparatus for testing the productivity of a formation in a well containing drilling fluid, comprising a string of pipe to be lowered into the well through the drilling fluid to adjacent the formation to receive a fluid sample therefrom and to be raised out of the well to remove the entrapped sample, said pipe being closed against the flow of the drilling fluid as the pipe is lowered into the well, a packer carried by the pipe as the pipe is lowered into the well and adapted to be seated by manipulation of the pipe to seal off the well above the formation, said packer adapted to be positively pressed against the walls of the formation to seal off the same, an inlet to the pipe communicating with the well below .the point at which the packer seals off the well, and means for controlling the inlet to permit fluid from the formation to enter the pipe while the packer is set and to prevent fluid from entering the pipe after the packer is released and the pipe is being raised out of the well."

The foregoing, which is claim 19 of the Simmons patent, became claim No. 8 of appellant's reissue application. It was held by the Examiner that appellant's application failed to disclose the subject-matter of the claim, and the Board of Appeals sustained the rejection upon that ground. Thereupon appeal was taken to this court.

Under the decision of the Board, the only references to be considered by us in relation to this, the only appealed claim, are the respective patents to appellant and Simmons above mentioned.

The brief of appellant says:

"Appellant's specification in the application for re-issue is an exact photographic

copy of the specification of his original patent number 1,896,522 without the slightest change."

The issue to be determined here is therefore limited to the question of whether the claim above quoted reads upon the disclosure made by appellant in his original application. In other words, is appellant entitled to make the claim?

It appears that, in the process of drilling wells, such as oil wells, the hole or bore is usually kept filled with a mud-laden fluid, frequently referred to as "the drilling fluid." This fluid serves the double purpose of carrying away the detritus formed by the cutting bit and maintaining hydraulic pressure upon the sides of the hole which prevents caving. Where the wells are deep, the boring carries the hole through various strata formations and water streams, and it is desirable frequently to take samples from the well bottom in order to ascertain whether a satisfactory oil-bearing stratum has been reached. Such samples, as of course, must be as free as possible of the drilling fluid and the water encountered in drilling, and, broadly, the end sought by both appellant and Simmons is that of securing uncontaminated samples.

It is believed that the claim itself is so clear in defining the elements of structure that no extraneous explanation of it need be attempted by us. It requires a string of pipe, sometimes called "the tester pipe," to be lowered into the well through the drilling fluid. When this pipe reaches the bottom of the well, it receives the sample, by means not here at issue, and is then withdrawn. The claim recites, "Said pipe being closed against the flow of the drilling fluid as the pipe is lowered into the well," and elsewhere it makes the requirement of an inlet to the pipe at a point described, and, in the last clause requires "means for controlling the inlet * * * to prevent fluid from entering the pipe after the packer is released and the pipe is being raised out of the well."

. It is pointed out in the brief of the Solicitor for the Patent Office that there is such an interrelationship between the clauses above quoted as that they really amount to only a single limitation. This seems substantially correct since, if the pipe is to be operated in closed condition, means to control the inlet near the bottom are essential.

The Examiner denied the claim to appellant because of the above limitation or limitations, holding that "applicant's apparatus does not show any means for closing the pipe against the flow of the drilling fluid," and saying also, "As based on the original specification, applicant never intended to have any pipe of such character."

In affirming the Examiner, the Board not only approved the foregoing but, going further, declared that to operate appellant's pipe in closed condition "would be a method of operation entirely contrary to that described in the original disclosure."

There was no oral argument on behalf of appellant before us, but in personam he filed a brief which has received our careful study in connection with the Simmons patent and appellant's own disclosures.

It seems unnecessary here to enter upon a detailed explanation of the Simmons device. Such may be found in the statement of the Examiner made following the appeal to the Board of Appeals, and its correctness is not challenged. It is sufficient to say that Simmons shows certain valves positioned so that they perform the functions of closing the pipe against the flow of the drilling fluid and controlling the inlet as required.

A most careful study of appellant's specification and drawings fails to reveal any physical means, such as the valves of Simmons, for effecting closure of the pipe as it is being lowered through the drilling fluid, nor anything equivalent to Simmons' means for controlling the inlet and closing the pipe as it is being raised.

Appellant's teaching, upon the point here in issue, seems to us to be limited to the use of compressed air turned into the well at its head in a manner described in his specification. By means of this, the drilling fluid may be kept out of the tester pipe, but this does not close the tester pipe either as it is being lowered or as it is being raised, and this method, we think, cannot properly be construed as meeting the requirement of an apparatus claim for structure which actually closes the pipe.

The decision of the Board of Appeals is affirmed.

Affirmed.