FARVAL CORPORATION v. REPUBLIC STEEL CORPORATION.

No. 23840.

United States District Court
N. D. Ohio, E. D.

Oct. 19, 1948.

J. F. Oberlin, of Cleveland, Ohio, for plaintiff.

T. F. Patton, of Cleveland, Ohio, and Walter J. Blenko and J. Wallace Hopkins, both of Pittsburgh, Pa., for defendant.

JONES, Chief Judge.

Plaintiff has charged defendant with infringing claims 5, 7 and 8 of plaintiff's Patent No. 1,961,051, known herein as the Kerns patent, and claims 6 and 7 of plaintiff's Patent No. 1,995,342, known herein as the Dirkes patent.

Defendant contends that both of said patents are invalid and not infringed.

The case was referred to the Hon. William B. Woods as Special Master to take testimony and report his findings of fact and conclusions of law. The Master's Report was filed on January 21, 1948, and on January 29, 1948, defendant filed its objections to said report. Defendant's objections are supported by a 73-page brief and opposed by a 21-page brief by plaintiff. The Master's Report consists of 50 pages, the transcript of testimony contains 348 pages and there are numerous paper and physical exhibits.

Oral hearing on defendant's objections to the Master's Report was had on October 1, 1948.

Rule 53(e) (2), Federal Rules of Civil Procedure, 28 U.S.C.A., provides that:

"In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. * * *"

This litigation involves lubricating systems which supply measured amounts of lubricant from centralized sources simultaneously to many bearings in machinery.

An early means for performing this operation was through the use of a device similar to that appearing as Figure B on p. 8 of the Master's Report. This method was only semi-automatic in that valves 1a, 1b, 2a and 2b had to be independently manipulated in order to obtain the proper flow of lubricant from the feed line into the measuring chamber and thence to the bearing. An improved method is represented by the Moore patent which is shown on Chart I of Plaintiff's Reply Brief. Here, the measuring device was operated by the application of pressure through the single feed line which compressed the spring 14 while filling the measuring chamber 5 with lubricant. When the feed line pressure was shut off, the pressure exerted by spring 16 moved the valve 15 to the right thereby opening the passageway from the measuring chamber to the outlet tube 7 and closing the passageway 12 between the feed line and the measuring chamber. The pressure exerted by the compressed spring 14 then forced the lubricant through the outlet 7.

The Kerns system replaced the spring 14 of Moore with pressure from a second feed line and is referred to as a "dual line system." This system operates by applying pressure alternately through each of the two feed lines (see diagram of Kerns patent). When the lower line 20' is under pressure and the upper line 14' in relief, the measuring chamber is filled with lubricant. When the upper line 14' is under pressure and the lower line 20' in relief, the lubricant is discharged from the measuring chamber to the bearing by the downward movement of the piston.

The Dirkes patent did away with the spring operated valve of Moore and Kerns in favor of a valve or valves operated entirely by the alternate pressure and relief of the fluid in the two feed lines. This

device is "double acting" in that lubricant is discharged to a bearing with each thrust of the piston rather than with alternate thrusts as in Moore and Kerns.

The accused lubricating system is known as the Blaw-Knox System and operates on the dual line, double action, principle but employs two separate valves, one at each end of and moving at right angles to the measuring chamber. (See chart attached to plaintiff's brief filed with the Special Master.)

The Master found both of plaintiff's patents (Kerns and Dirkes) to be valid and infringed by defendant.

Defendant's objections to the report are six in number and specifically refer to about 55 different parts of the Report.

█ Objection No. 1. To the Master's findings and conclusions to the effect that the Kerns patent, No. 1,961,051, is valid.

Defendant asserts that this patent should have been found to be invalid for the following reasons:

(A) The Kerns patent is invalid because it covers an unpatentable combination of old elements and is not a true combination.

The Master comes to no conclusion of fact with respect to this particular question but his discussion of it would indicate that he considered it. Conclusion of law No. 2 is that the patent is valid. I find nothing in defendant's brief which would indicate that the Master's failure to find that the Kerns patent is not a true combination was clearly erroneous.

(B) Assuming there is a true combination, the Kerns patent is invalid because the combination is an old and exhausted, and therefore unpatentable, combination.

Defendant contends that the Moore, Lamb, Woodruff, and Parker patents anticipate the teaching of the Kerns patent. The Master's findings of fact on this question are Nos. 13 and 14 on pages 17 and 18 of the Report and are to the effect that the Moore patent is inoperative and that the other patents relate to measuring devices "for use other than in lubricating systems and are wholly unsuited for such use." The Master based his findings as to the inoperativeness of the Moore patent upon the testimony to that effect by Mr. Yeomans, plain-tiff's expert witness (Transcript pp. 319, 320) and upon the fact that no evidence was introduced to show that it was ever put to commercial use. This evidence is sufficient to warrant a conclusion of lack of utility. Although the Master did not specifically find Moore invalid, such finding is justified.

An examination of the Parker, Woodruff and Lamb patents, claimed by defendant as prior art embodying the principle of the Kerns patent, reveals that they are all fluid measuring devices each employing the idea of a measuring cylinder containing a piston for the expulsion of the fluid. The valves controlling the filling and exhaustion of the measuring cylinders are controlled by the extraneous forces rather than by the pressure of the substance being measured as in the Moore, Kerns and Dirkes patents The Parker patent relates to a "measuring and filling" apparatus, the Lamb patent to a "filling machine" and the Woodruff patent to an "oil measuring apparatus." The Master's conclusion of fact No. 14 is to the effect that none of the foregoing patents are designed for use in lubricating systems, although they all appear to embody the measuring cylinder principle used in the Kerns, Dirkes and Blaw-Knox systems.

The cases of Bassick Mfg. Co. v. R. M. Hollingshead Co., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251 and Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008, strenuously cited by defendant, hold that an improvement of a part of an old combination will not support a patent on the entire new unit, consisting of the old combination and the improvement where the "construction and operation is otherwise unchanged." 298 U.S. at page 425, 56 S.Ct. at page 791, 80 L.Ed. 1251. There is no dispute as to the correctness of this doctrine but it is inapplicable here where there has been no finding of fact that the patent at issue consists of an old combination.

(C) The Kerns patent is invalid because it does not disclose the best method of applying the invention.

In support of this argument, defendant points to the fact that the outlet port 22 of Kerns was moved to a different position in the commercial model and to the fact that

Kerns applied for another patent on the same day as the one at issue in which the outlet port 22 was located at the end of the chamber 18. The Master found that the change in the commercial model was a mere refinement in design but drew no conclusions with respect to the disclosures of the other patent. I see nothing "clearly erroneous" in the Master's disposition of this issue.

■ Objection No. 2. To the findings and conclusions to the effect that patent No. 1,995,342 (Dirkes) is valid.

Defendant offered three patents (Barks, Jennings and Hillis) which were granted on applications filed prior to Dirkes' application.

Plaintiff introduced records of interference proceedings wherein the Examiner of Interferences found that Dirkes conceived his invention at an earlier date than Hillis. Reference to the certified record of Interference No. 62,047 reveals that no decision was made therein concerning Dirkes' priority with respect to the Barks or Jennings patents.[1]

■ The Master's finding of fact No. 15 (p. 18) is to the effect that in the interference proceeding, Dirkes was found to be the "prior inventor". In his discussion (p. 32), the Master says that in the interference proceeding it was determined that Dirkes had priority over "the other patentees" and was awarded priority "over the others." This reference to "patentees" and "others" (in the plural) would indicate that the Master was of the opinion that the Examiner of Interferences found that Dirkes had priority, not only over Hillis, but also over Barks and Jennings. It would seem, therefore, that although Hillis filed his application before Dirkes, the result of interference proceedings would be prima facie evidence that Dirkes conceived his invention before Hillis. It would not be conclusive evidence of this fact, however, since the defendant herein was not a party to the

interference proceeding and was therefore not bound by res judicata. (Walker, p. 940) The presumption of validity residing in the patent grant is required to be met and overcome by the challenger; and it seems to me that it was incumbent upon the defendant not only to assert but to establish by evidence that the Patent Office decision in the interference proceedings not only was not binding upon the defendant but that it was not in accordance with the facts. This I think the defendant has failed to do.

Defendant also offered a British patent (Armstrong) as evidence of prior art against Dirkes but the Master found that that could not be considered an anticipation because "it would be incapable of functioning in a dualine lubricating system." (Conclusion of Fact No. 16, Report, p. 19) Defendant does not object to this finding.

■ Objection No. 3. To the findings and conclusions to the effect that Patent No. 1,961,051 (Kerns) is infringed.

(A) Claim 5 of the Kerns patent calls for "a body and a piston reciprocal therein, said body having a loading opening and a discharge opening at one side of the piston and a pressure opening at the other side * * *."

Defendant says that the Blaw-Knox device "does not have two passages leading to the same side of the piston as does Kerns' valve." (Defendant's Brief, p. 50)

The Master found that:

"It is the 'body' of the Kerns' 'pump', not the piston chamber therein, that is defined as having 'a loading opening and a discharge opening at one side of the piston'. Clearly the Blaw-Knox device has such openings at each end of the piston, and what defendant is seeking to do is to confuse these with the intermediate valve-controlled ports which direct the flow of lubricant into and out of the piston chamber." (Master's Report, p. 39)

I do not hold that this finding is clearly erroneous.

---

[1] Interference No. 62,047, as of November 7, 1932 involved Gerdes, Barks, Crump, Reswick, Jennings and Hillis. On January 23, 1933 the Interference was reformed by omitting the parties Gerdes, Barks, Crump and Reswick and by adding Dirkes. In the fall of 1933 the common assignee of Jennings and Hillis elected to prosecute only the Hillis application. The final hearing, on February 24, 1934, involved only the remaining parties Dirkes and Hillis, priority being awarded to Dirkes, the junior party.

The diagrams and exhibits indicate that, although the valves and passages in the accused device are arranged differently than those of the Kerns patent, the dual-line principle, whereby the measuring and injecting mechanisms operated by alternate pressure and relief of the lubricant in the two supply lines, is employed in both. The fact, that the valve arrangement of the Blaw-Knox system may permit the lubricant to flow into the measuring chamber through the same opening through which it will be discharged upon reversal of the pressure, is not a difference which would avoid the spirit of Kerns' teaching.

(B) Claim 5 of the Kerns patent also calls for " * * * means for moving said valve (23 in patent diagram) to a position closing said loading opening and uncovering said discharge opening on relief of pressure in said delivery device."

This "means" for moving valve 23 from left to right is furnished by the expansion of the spring 24 which had been compressed by the pressure of the lubricant flowing from line 20 through the loading opening 21.

Defendant contends that its device does not make use of a spring or springs to operate its valves, using instead the moving lubricant to actuate all valves and that "lubricant under pressure per se cannot be considered an element required by a claim of a mechanical patent * * *." (Defendant's Brief, p. 52) Defendant cites the case of In re Macready, 81 F.2d 551, wherein the Court of Customs and Patent Appeals held that the use of air pressure to prevent fluid from entering a pipe used in oil well drilling operations could not "be construed as meeting the requirement of an apparatus claim for structure which actually closes the pipe," as authority for its proposition that "lubricant under pressure" is not a patentable "means" and that even if it were a patentable means it could not be considered here since the Kerns patent does not disclose lubricant under pressure as a means for moving valve 23 from left to right.

The Master said:

"Surely lubricant under pressure is just as much a tangible, actuating 'means' as a spring, and it is unnecessary, except in an attempt to confuse the issue, to go back to the source of lubricant supply."

Claim 6 of the Kerns patent discloses the use of a spring to close the discharge opening 22 and open the loading port 21. Claim 5, as set forth above, relates only to the "means" for causing this movement of valve 23, no specific means being disclosed.

While there may be serious questions with respect to whether the claim for "means" is too broad or vague or whether that part of the claim relates to a mere function, I do not believe defendant has shown the Master's decision to be clearly erroneous.

As to Kerns' claim 7, defendant again contends that its device does not infringe since it does not have two separate passages on the same side of the piston; but the placing of multiple headed valves between the measuring chamber and the lubrication and supply ports does not avoid Kerns' teaching.

Defendant contests the Master's finding of infringement of Kerns' Claim 8 which, defendant says, is dependent upon Claim 7 and is therefore, for the same reasons advanced with respect to Claim 7, not infringed. The Master's disposition of Claim 8 does not appear, to me, to be clearly erroneous.

■ Objection No. 4. To the findings and conclusions to the effect that Patent No. 1,995,342 (Dirkes) is infringed.

The Dirkes patent discloses what would appear to be an improvement over the Kerns device. There are two essential differences between Kerns and Dirkes.

1. The Dirkes device discards the use of any springs to operate its valves, using instead the pressure of the lubricant in the feed lines to move the valves in either direction.

2. The measuring chamber is "double acting," that is, upon the movement of the piston in the measuring chamber in either direction lubricant is discharged through an outlet port whereas in Kerns there was a discharge only upon alternate movements of the piston.

It is also claimed that Dirkes is easier to manufacture because of its design. As will be noted from the various diagrams and in its modified commercial form as the "Farval Dualine System", the Dirkes device employs a single valve chamber containing a one, two or three headed valve which governs the flow of lubricant into the proper side of the measuring chamber and from the measuring chamber out the proper outlet port. The accused device employs two valve chambers, one at each end of the measuring chamber, each chamber containing a three headed valve, which are actuated by alternating pressure and relief in the two supply lines and which, thus actuated, direct the flow of lubricant from either of the supply lines into the proper end of the measuring chamber and thence through the proper outlet port to the point of lubrication. Defendant says that by the use of two valves instead of one, as in Dirkes, less initial feed line pressure is required for operation, since the valves move alternately rather than simultaneously thus reducing friction and there is less chance of the valves sticking.

Plaintiff contends, and the Master found, that defendant's device infringes on Claims 7 and 8 of the Dirkes patent.

Defendant argues that the Blaw-Knox system does not infringe since it employs the two valves whereas Claims 7 and 8 of Dirkes call for "a valve cylinder" and "a shiftable valve member therein."

■ It is a well established principle of patent law that mere separation of one integral part into two parts, which do substantially the same thing in the same way as the one part, does not avoid infringement (Walker, pp. 1698, 1699). The implication would be that the Master believes that the two valves of the defendant's device do perform the same functions in substantially the same way as in Dirkes' device. Although there does not appear to be any specific finding to this effect in the Report, I think infringement is clear.

The foregoing represents a response to each general objection which defendant has made to the Master's Report. Although defendant has objected to about 55 separate portions of the Report, these need not be considered individually since all relate to the six general objections.

■ This memorandum is by no means exhaustive of the many matters of law and fact raised by defendant, but this is not required since the Master's findings and conclusions are to be deemed correct unless they be shown to be clearly erroneous.

Defendant's objections will be overruled and the Report of the Master confirmed; and his findings and conclusions are approved and adopted.

■ It was stated by defendant's counsel at the commencement of oral argument that the defendant had abandoned and dismantled the offending structure before the filing of this case. However, since the litigation has been pressed and resisted to this point the concluding disposition here requires judgment for the plaintiff and an order of injunction as prayed.

