J. R. CLARK COMPANY, and John R. Clark, Plaintiffs,

v.

JONES & LAUGHLIN STEEL CORPO-RATION, Defendant.

Civ. A. No. IP 58-C-288.

United States District Court
S. D. Indiana,
Indianapolis Division.

May 9, 1960.

Harold B. Hood, Indianapolis, Ind., Andrew E. Carlsen and Douglas L. Carlsen, Minneapolis, Minn., for plaintiffs.

Thompson, O'Neal & Smith, Indianapolis, Ind., G. R. Harris, Pittsburgh, Pa., for defendant.

STECKLER, Chief Judge.

This is a patent infringement suit in which both plaintiffs and defendant have filed motions for summary judgment. Defendant has also filed a motion to strike plaintiffs' motion for summary judgment. Additionally, there is pending, for consideration and disposition, a motion by plaintiffs to amend the Complaint, a Counterclaim by defendant for declaratory judgment, and objections filed by plaintiffs to certain interrogatories propounded by defendant. These matters have been carefully considered in the light of extensive briefs and oral arguments.

There appear to be no real issues of fact insofar as plaintiffs' motion for summary judgment is concerned, and counsel for the respective parties apparently agree that the dispositive issues in the case now before the Court are primarily issues of law.

The admitted factual developments leading up to the present motions are as follows. On December 22, 1953 the U. S. Patent Office issued the K. B. Olander patent 2,663,102, in suit, for an Ironing Table invention, the application for the patent having been filed June 9, 1950. After the patent issued Olander assigned his patent to John R. Clark, who in turn licensed it to The J. R. Clark Company of Spring Park, Minnesota.

On May 12, 1954 the Clarks, individual and corporate, filed a suit (C.A.No.6296) for infringement of claim 1 of the Olander patent, against Geuder, Paeschke & Frey Co. in the United States District Court for the Eastern District of Wisconsin, the accused structure there involved being identified as the Model C–690 ironing table. The suit was tried in January 1957 before the Honorable Robert E. Tehan, Chief Judge of that District, who on December 19, 1957 entered judgment for the plaintiffs, holding claim 1 of the Olander patent valid and infringed, granted an injunction, and awarded plaintiffs damages, costs and disbursements. Extensive findings of fact and conclusions of law by the Court are reported at 159 F.Supp. 948.

An appeal was taken by the defendant Geuder, Paeschke & Frey Co. to the Court of Appeals for the Seventh Circuit which, on October 10, 1958, affirmed the District Court in a unanimous decision written by Chief Judge the Honorable F. Ryan Duffy, reported at 259 F.2d 737. A petition for writ of certiorari was denied by the Supreme Court of the United States on February 24, 1959, 359 U.S. 914, 79 S.Ct. 587, 3 L.Ed.2d 576.

When the case was remanded to the District Court Judge Tehan, on plaintiffs' motion for accounting appointed a Special Master, Theodore L. Priebe, to take the account and prepare a report on the amount to be recovered by the plaintiff from the defendant. It appears that testimony has been taken by both parties, briefs have been filed, and the accounting stands submitted, awaiting the Master's report.

Meanwhile, however, the defendant in the Wisconsin suit, on August 12, 1959, filed a countersuit (C.A. No. 59–C–175) in the same court against the aforesaid Clarks, and in which Geuder, Paeschke & Frey contends that it should be relieved from, and that the Clarks should be restrained from enforcing, the mandated

judgment in the previous suit, C.A. 6296. The asserted basis for said countersuit is that claim 1 of the Olander patent should be declared invalid because it is allegedly for the same invention as a claim appearing in a Hortman patent 2,-896,347 which issued July 28, 1959 on an application filed April 12, 1950, or about eight weeks prior to the Olander filing date.

Simultaneously with the filing of the aforesaid countersuit on August 12, 1959 Geuder, Paeschke & Frey Co. also sought a stay of the accounting proceedings, conditioned on the outcome of the countersuit, but that was denied by Judge Tehan and the accounting in the original or main suit accordingly proceeded on schedule as above noted.

Referring next to the activities of the present defendant Jones & Laughlin Steel Corporation, it appears that by letter dated March 17, 1958 plaintiffs notified defendant that it was infringing the Olander patent 2,663,102, but defendant did not then discontinue making and selling the ironing tables that were accused of being infringements. At that time the judgment sustaining the Olander patent had been entered by the District Court in the original Wisconsin suit, but the aforesaid appeal had been taken to the Court of Appeals for the Seventh Circuit and it is understandable that plaintiffs preferred to await the affirming decision of October 10, 1958 by that Court before filing the present suit on November 13, 1958.

The present defendant's Answer to the Complaint herein, as well as its answers to interrogatories propounded by plaintiffs, set forth the essential facts upon which plaintiffs rely in their Motion for Summary Judgment to support their contention that Jones & Laughlin Steel Corporation was in privity with Geuder, Paeschke & Frey Co. and is accordingly bound by the judgment in the Wisconsin suit (C.A. 6296) under the doctrine of res judicata or estoppel by judgment. In this respect I am convinced that plaintiffs' position is correct and that the Court is compelled, under the prevailing authorities, to sustain plaintiffs' Motion.

The admitted and somewhat surprising facts are that on or about September 3, 1957, defendant Jones & Laughlin Steel Corporation, with full knowledge of the Wisconsin suit, which had been tried in January of the same year, "purchased from Geuder, Paeschke & Frey Co. the assets of that firm's Consumer Products Division which manufactured and sold * * * ironing tables" and those assets included "a stock of Model C–690 ironing tables" as well as "a supply of raw materials for making Model C–690 ironing tables." The assets also included "drawings of the Model C–690 ironing table * * * and tools or special equipment for manufacturing that ironing table." Defendant further admits that after said purchase and prior to commencement of the present suit it continued to manufacture Model C–690 ironing tables which "were substantially identical to the Model C–690 tables previously made and sold by Geuder, Paeschke & Frey Co.," and "also made and sold an ironing table known as Model C–691 which was of substantially the same construction as the Model C–690."

No less surprising is defendant's admission that "On or about June 1, 1958" (which was after the patent had been held valid and infringed in the Wisconsin District Court) "defendant sold to Arvin Industries, Inc. those assets above mentioned which related to the manufacture of ironing tables, together with defendant's inventory of finished ironing tables" including "an inventory of finished (Model C–690 and Model C–691) ironing tables, and parts for additional ironing tables of the same models, as well as tools and equipment which defendant had previously acquired from Geuder, Paeschke & Frey Co." (The foregoing quotes are from defendant's answer and answers to interrogatories.)

Being confronted by the foregoing situation I am impressed by the line of reasoning advanced in a number of cases, including the decision in G. & C.

Merriam Co. v. Saalfield, 6 Cir., 190 F. 927, 931, where the Court said:

" * * * It is contended by counsel for the complainant that the parties are not the same, nor privies to those parties, because Saalfield was not a party to the former suit, and so not bound by the judgment, and, as estoppels must be mutual, the complainant is not bound. Let us refer to the facts. The suit in Massachusetts was commenced on August 9, 1904. The cross-bill was filed September 20th of the same year. The answer to the cross-bill was filed January 9, 1905. Replication to the answers to the bill and cross-bill were filed as early as February, 1905. Judge Colt's decision was filed January 9, 1907, and his decree, so far as it determined the rights of the parties, was affirmed by the Circuit Court of Appeals on January 30, 1908. In May, 1908, the defendant Saalfield 'took over' the business of publishing the dictionaries from Ogilvie. The final decree was entered April 21, 1909. What was the precise nature of the contract between him and Ogilvie does not appear, and Saalfield refuses to disclose it. The court might well presume, if need be, that the contract was only of an agency and did not transfer a substantial right. But it is not material. The case was already pending, and the whole controversy had been submitted for the judgment of the court. * * * If a third party may thus come into the acquisition of rights involved in pending litigation without being bound by the final judgment, and require a suit de novo in order to bind him, he might, pending that suit, alienate that right to another with the same result, and a final decree bearing fruit could never be reached."

In Alb, Inc. v. Noma Lites, Inc., 2 Cir., 231 F.2d 662, 663, the defendant in an earlier suit had sold the portion of its business which had been making the alleged infringing devices to the defendant in the action under consideration, who, like the present defendant, had full knowledge of the earlier suit. In affirming the judgment, based on the doctrine of res judicata the Court of Appeals said:

"In the prior suit had the court found against Noma Electric Corporation the judgment would undoubtedly have been binding on Noma Lites, Inc. which is successor to the interest of, and therefore, in privity with its former parent and predecessor. By parity of reasoning the judgment in favor of Noma Electric Corporation now operates here as collateral estoppel with respect to all issues litigated with plaintiff in prior suit."

Another decision directly in point is that in Acetol Products, Inc. v. Sam Tripi et al., D.C.Mo., 7 USPQ 161, wherein it was found that—

"From all of the evidence the conclusion is inescapable that the defendants here, during the pendency of Equity Case No. 1194, took over from the defendant in that case and continued the acts of infringement which had been committed by it. Certainly from this finding of fact no other conclusion is possible than that the defendants here were in privity with the defendant in Case No. 1194 and are, therefore, bound by the judgment in that case as to issues common between that case and the present one. Macey Co. v. Globe-Wernicke Co., [7 Cir.], 180 Fed. 401; G. & C. Merriam Co., v. Saalfield, [6 Cir.], 190 Fed. 927; Continental Wire Fence Co. v. Pendergast [C.C.], 126 Fed. [381] 38; National Conduit Mfg. Co. v. Connecticut Pipe Mfg. Co. [C.C.], 73 Fed. [491] 497.

"Upon the oral argument it was urged by the defendants that the acquisition of a business involving alleged infringement of a patent at a time when infringement was in course of litigation, but before judg-

ment, was not sufficient to establish privity between the person acquiring the business and carrying it on and the party from whom it was acquired and that, therefore, as to him the claim of res adjudicata can not be made. A few authorities so hold. The great weight of authority, however, including decisions by the Supreme Court of the United States and Federal courts generally, is to the effect that succession by one party to another, if at any time subsequent to the commencement of a suit, results in privity. 34 Corpus Juris, 1011, 1012."

Defendant seeks to avoid or minimize the impact of the foregoing and similar authorities on the present situation by reliance principally on the decision of the Court of Appeals for the Seventh Circuit in Bank v. Rauland Corp. et al., 146 F.2d 19, 24, but that decision is quite clearly not in point.

In the Bank case the plaintiff's patent was held invalid as well as not infringed in both the trial and appellate courts. An issue quite collateral to those of validity and infringement was in the question as to whether or not the Rauland defendants were estopped to deny validity or infringement because of previous litigation in which Bank had brought suit under the same patent against a defendant Webster. The Webster suit never reached trial, having been disposed of by a consent decree of validity and infringement, and by Webster taking a license which, except for some initial consideration, was free from payment of any royalties until validity of the patent had been adjudicated. Bank then contended that because the Rauland Corporation had purchased part of the Webster business it was bound by the consent decree. This argument was rejected by the Court, not merely because it was predicated on a consent judgment but because the agreement between Bank and Webster was one under which Webster gave no more than lip service to the patent "until the validity of this patent

was fully adjudicated," and, of greater importance, because—

"We think such privity did not exist. The district court found that neither the corporate nor the individual defendant was in privity with the Webster Company in the litigation between Bank and that Company."

In the light of the foregoing authorities it is this Court's conviction that the factual situation above set forth is one that clearly establishes privity between Jones & Laughlin Steel Corporation and Geuder, Paeschke & Frey Co., and that the present defendant is therefore bound by the judgment of the United States District Court for the Eastern District of Wisconsin in Civil Action No. 6296, as affirmed by the Seventh Circuit Court of Appeals under the doctrine of res judicata. Plaintiffs' motion for Summary Judgment is accordingly sustained.

At this point it is convenient to dispose of plaintiffs' Motion to amend the Complaint. The purpose of that Motion is merely to add paragraphs 15, 16 and 17, setting forth various allegations respecting defendant's purchase of the infringing ironing table business from Geuder, Paeschke & Frey Co. As defendant has filed an Assent To Plaintiffs' Motion To Amend Complaint there is no dispute as to the propriety or necessity of the proposed amendment and this Motion is accordingly also sustained.

■ Inasmuch as the Counterclaim filed with defendant's Answer is for a declaratory judgment, under 28 U.S.C. §§ 1332, 1338, 2201 and 2202, and is bottomed on the same identical reasons (i. e. alleged invalidity and non-infringement) as given in the Answer proper, it must now of necessity follow that said Counterclaim should be and is hereby dismissed by reason of the Court's action sustaining plaintiffs' Motion for Summary Judgment.

■ Likewise, and for the same reason, defendant's Motion to Strike Plain-

tiffs' Motion for Summary Judgment, must be and is hereby overruled. Although the reason given for the Motion to Strike is now somewhat moot it is to be noted that it differs from the issues raised by defendant's Answer and Counterclaim. In short the alleged grounds for the Motion are that the aforesaid countersuit (C.A. 59–C–175) brought by Geuder, Paeschke & Frey Co. against the Clarks in the United States District Court for the Eastern District of Wisconsin "renders premature the application of the doctrine of res judicata in this suit." This contention is rejected by the Court as being without merit and appears to be of a dilatory nature.

Whatever the circumstances may be with reference to the relationship, if any, between the Olander and Hortman patents, those issues are not before this Court, and the mere fact that the countersuit was filed in the Wisconsin District Court, does not, in this Court's opinion, affect the finality of the judgment now of record in Civil Action No. 6296, nor give rise to any reason for staying judgment in the present suit. As a matter of fact since the Wisconsin District Court was not sufficiently impressed by the filing of the countersuit in its own jurisdiction, to stay the accounting proceedings in the original suit (C.A. 6296) this Court would have even less reason for staying proceedings in the present action.

■ Turning next to defendant's Motion for Summary Judgment, it seeks a dismissal of the present action with prejudice, "on the ground that U. S. Patent 2,663,102, in suit, is invalid as a matter of law because it constitutes double patenting of the invention of U. S. Patent 2,663,101." The two patents in question were both issued to the same patentee, K. B. Olander, and are both directed to ironing table inventions. This is not a case of "double patenting," however, and the existence of the Olander patent 2,663,101 does not invalidate Olander patent 2,663,102 for at least two important reasons, namely, (1) that they are not for the same invention, and (2)

they were both issued on the same day, December 22, 1953.

That the two claims, selected for comparison purposes from the respective patents, are not for the same invention is made clear on pages 10–11 of defendant's own main Brief where the claim elements are set out in parallel columns, and from which it is immediately apparent that they are for specifically different combinations of elements and that each contains limitations not found in the other.

■ Of greater importance, however, is the fact that because both patents issued on the same day neither extends the life span of the other and consequently no harm can result insofar as an extension of patent monopoly is concerned. In this connection this Court is impressed and controlled by the rule established by the Court of Appeals for this Circuit forty years ago in Deister Concentrator Co. v. Deister Mach. Co., 7 Cir., 263 F. 706, 710, wherein, under comparable circumstances, that Court held—

"But there has been no double patenting in the present case. The two applications were copending. Grant for the purpose of the argument that the specifications in the first application were sufficient to support the claims included in both patents, and that claim 1, patent No. 1,040,165 is the broader or more generic claim; yet it by no means follows that the broader claim is void. The two patents were issued on the same day. It would be erroneous to assume that the issuance of one preceded the issuance of the other, when the two applications were copending—one referred to the other and both had a common applicant. The number which the patent bears under these circumstances can have no significance whatsoever.

"We are not prepared to say the claims in the second patent were not joinable with the claims of the

first patent; but we are convinced that no damage to the public resulted from their separate presentation in view of their simultaneous issuance. No fraud was practiced or intended by the applicant, as is shown by the fact that reference to the first pending application appears in the second."

The rule that there can be no double patenting as between patents issuing on the same day has also been adopted by other Courts.

In Theroz Co. v. United States Industrial Chemical Co., Inc., et al., D.C., 14 F.2d 629, 640, there was a similar situation where two patents No. 1,262,267 and No. 1,262,268 were issued to the same inventor on the same day. The validity of 268 over 267 was raised. The Court stated:

"Since the patentee is the same in both instances, the second Schaub patent is not invalidated by the application for the first. (citing Deister case) It is true in the case at bar, as in the case cited, that, although the claims in the second patent might have been joined with the claims of the first, no damage to the public resulted from their separate presentation, in view of their simultaneous issuance, and it is quite clear that no fraud was practiced or intended by the applicant."

In W. A. Sheaffer Pen Co. v. Eagle Pencil Co., D.C.S.D.N.Y., 55 F.2d 420, 421, the patentee owned three patents all issued on the same day, and the defendant urged invalidity on the ground of triple patenting. The Court stated:

"Whether or not the designs could have been combined in one patent, it is quite apparent that the plaintiff has obtained no advantage from the triple patenting, since the period of the monopoly has not been extended one day beyond what it would have been if a single patent had been issued, because all of them were applied for and issued on the same days."

For the reasons and under the authorities thus noted this Court hereby overrules defendant's Motion for Summary Judgment.

Plaintiffs' objections to answering certain interrogatories (5, 6, 8 and 10) are overruled, but with the proviso that the answers need not be made unless and until it appears that such answers may serve a really useful purpose in disposing of substantial issues.

Thus the sections of Interrogatory 5 concern themselves with the issue of priority of invention dates, while Interrogatories 6, 8 and 10 are only relevant to questions of commercial success. Answers to such interrogatories bear on the ultimate issue of invention and in the present posture of this case that is not a factor under consideration. In view of the disposition herein made of the various motions it would seem that the answers to these interrogatories would be of small consequence, but in any event, and from a practical point of view, it is believed that counsel for the parties should be able to resolve whatever problems might still exist with respect to them.

There remain then for further determination questions incident to an injunction and to the amount to be recovered by plaintiffs from defendant.

■ The fact that defendant has discontinued making infringing ironing tables does not deprive plaintiffs of injunctive relief. In the Wisconsin suit the Court issued an injunction against the defendant Geuder, Paeschke & Frey Co. which had also discontinued infringing, and certainly the present defendant is in no more favorable position. Furthermore, the preponderance of authorities dealing with this question clearly justifies granting of an injunction in the present case. Hughes Tool Co. v. Owen, 5 Cir., 123 F.2d 950; Farval Corp. v. Republic Steel Corp., D.C., 82 F.Supp. 31, affirmed 6 Cir., 179 F.2d 719, certiorari denied 339 U.S. 938, 20 S.Ct. 673, 94 L. Ed. 1355; Vortex Mfg. Co. v. Ply-Rite Contracting Co., D.C., 33 F.2d 302; Seeg-

er Refrigerator Co. v. White Enamel, C.C., 178 F. 567; Cayuta Wheel & Foundry Co. v. Kennedy Valve, C.C., 127 F. 355; American Bank Protection Co. v. City Bank, C.C., 181 F. 375; Stromberg Motor Devices Co. v. Holley Bros., D.C., 260 F. 220; Star Ball Player Co. v. Baseball Display Co., D.C., 8 F.2d 46; and Laucks, Inc. v. Kaseno Products, D.C., 59 F.2d 811. A writ of permanent injunction comparable with the one granted in the Wisconsin suit will accordingly be issued.

There is also no doubt in the Court's mind as to plaintiffs' right to a full recovery of damages and other assessable items. The statute (35 U.S.C. § 284) provides that "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, etc.," and this has been held to be a mandatory requirement that leaves no discretion with the court. Bros, Inc. v. W. E. Grace Mfg. Co., et al., 5 Cir., 261 F.2d 428; Livesay Industries, Inc. v. Livesay Window Co., 5 Cir., 202 F.2d 378; Middleton v. Wiley, 8 Cir., 195 F.2d 844; Laskowitz v. Marie Designer, D.C., 119 F.Supp. 541; Switzer Bros. v. Centennial Liquor Stores, 5 Cir., 186 F.2d 414. The plaintiffs are also entitled to be heard on such issues as justification for increasing damages under the Code, interest, costs and disbursements, attorneys fees, etc., all of which is proper subject for an accounting whether taken by the Court or by an appointed master.

Although an accounting is in order counsel for the parties, at the hearing before me on March 23, 1960, agreed that accounting proceedings should be stayed until such time as a possible settlement might be worked out, or at least until the Master's report had been completed and acted upon by the District Court in the Wisconsin suit (C.A. 6296). With that procedure I am in accord and particularly because of difficulties that might arise by reason of the fact that the present defendant bought and sold infringing tables included in the inventory taken over from the defendant in the Wisconsin suit. It is also, of course, to be hoped that the Master's report in the Wisconsin suit will facilitate a disposition of such recovery items as the present parties may be unable to agree upon.

Should the foregoing suggested procedure for any reason not prove feasible then it might be practical to have a pretrial conference in an effort to resolve such questions as have not then been disposed of.

Meanwhile plaintiffs' counsel may prepare and submit drafts of order, injunction and judgment in accordance with the rulings of the Court as herein set forth.